## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

ERIC WARE,                                )
                                          )
          Plaintiff,                  )
                                          )
      v.                           )        No. 4:20-cv-01065-AGF
                                          )
ST. LOUIS CITY JUSTICE CENTER,            )
                                          )
         Defendant.                  )

### MEMORANDUM AND ORDER

This matter comes before the Court on review of plaintiff Eric Ware's amended complaint pursuant to 28 U.S.C. § 1983. (Docket No. 12). For the reasons discussed below, the Court will dismiss the claims against Andreal Brown, Adrian Barnes, Officer Wilkes, Officer Riggins, and Corizon. Additionally, the Court will direct the Clerk of Court to issue process on Dr. Fe Fuentez in her individual capacity as to plaintiff's claim of deliberate indifference to his medical needs.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## Background

Plaintiff is a self-represented litigant who is currently a pretrial detainee at the St. Louis City Justice Center (SLCJC). On August 13, 2020, he filed a civil action pursuant to 42 U.S.C. § 1983 that named the SLCJC as the sole defendant. (Docket No. 1). Along with the complaint, plaintiff also submitted a motion to appoint counsel and a motion for leave to proceed in forma

pauperis. (Docket No. 2; Docket No. 3). The substance of the complaint concerned the SLCJC's handling of the COVID-19 pandemic.[1]

On August 24, 2020, the Court granted plaintiff's motion for leave to proceed in forma pauperis, and assessed an initial partial filing fee. (Docket No. 4). The Court also reviewed plaintiff's complaint pursuant to 28 U.S.C. § 1915, and determined that it was subject to dismissal. Specifically, the SLCJC was not a suable entity under 42 U.S.C. § 1983. Furthermore, even if the City of St. Louis had been substituted as the proper party defendant, plaintiff had not stated a municipal liability claim. Rather than dismissing the action, the Court directed plaintiff to file an amended complaint according to the instructions set forth in the order. He was given thirty days in which to comply.

Three days later, on August 27, 2020, plaintiff filed a motion for leave to file an amended complaint. (Docket No. 5). The motion was denied as moot as the Court had previously directed him to submit an amended complaint on August 24, 2020. (Docket No. 8). Plaintiff subsequently sought an extension of time to comply, which was granted. (Docket No. 9; Docket No. 10). He filed his amended complaint on October 5, 2020. (Docket No. 12).

**The Amended Complaint**

Plaintiff's amended complaint is handwritten on a Court form. He names six separate defendants: Charge Nurse Andreal Brown; Superintendent Adrian Barnes; Officer Wilkes; Officer Riggins; Corizon; and Dr. Fuentez.[2] (Docket No. 12 at 2-4). Defendants Brown, Barnes, Wilkes,

---

[1] COVID-19 is the name of the illness caused by the novel coronavirus known as SARS-CoV-2, which originated in China, and has spread globally, resulting in the declaration of a national emergency. *See* Pres. Proc. No. 9994, 85 Fed. Reg. 15337, 2020 WL 1272563 (Mar. 13, 2020). In the United States, the virus has resulted in hundreds of thousands of cases, and tens of thousands of deaths. *See In re Rutledge*, 2020 WL 1933122, at *1 (8th Cir. 2020).

[2] The Court notes that plaintiff appears to be referring to Dr. Fe Fuentes.

3

Riggins, and Fuentez are sued in their individual capacities only. As in the original complaint, the amended complaint concerns the handling of the COVID-19 pandemic in the SLCJC.

With regard to Nurse Brown, plaintiff states that he was placed into isolation in the SLCJC infirmary "due to having symptoms that mirrored" COVID-19. (Docket No. 12 at 4). He was informed by staff that he might have pneumonia. On July 2, 2020, while awaiting results from his COVID-19 test, Nurse Brown "allowed security to move two other pre-trial detainees in the infirmary cell with [him] who were also awaiting testing." Plaintiff asserts that all three detainees "contested the fact" that they were being placed into the same cell together. They also complained about the "conditions of [the] deplorable cell."

On July 4, 2020, plaintiff states that he was in such bad pain that he "screamed and yelled" and staff had to break a "plated window" in order to come in an help him. (Docket No. 12 at 5). At that point, plaintiff and the two other detainees were "moved to another cell similarly situated to the cell [they] left." On July 6, 2020, plaintiff states that the two other pretrial detainees were released from isolation with negative COVID-19 tests. Plaintiff's test, however, was lost.

On July 8, 2020, plaintiff states that Nurse Brown and Officer Riggins moved two more pretrial detainees into the cell with him, "claiming that they had similar symptoms." Plaintiff "tried to physically stop them from letting the two detainees" into the cell, but Officer Riggins threatened to deploy pepper spray, and plaintiff "moved out of the way." One of the detainees was sneezing, coughing, and not wearing a mask, and plaintiff "politely asked him to put his mask on." The detainee initially refused, and plaintiff advised him that they were "going to fight right now," at which point the detainee "opted to wear his mask and [they] reconciled."

On July 11, 2020, plaintiff was released from the isolation cell in the infirmary with negative test results. However, he was sent back to general population in isolation because the

other detainees had tested positive. Plaintiff believes this put others at risk. He also complains about mold in his cell, standing water on the floor, an inability to communicate with his family or attorney, and a lack of access to the courts, though he does not allege that Nurse Brown was personally responsible for any of these things.

With regard to Superintendent Barnes, plaintiff states that he wrote a grievance contesting his conditions of confinement, which he "was able to slip" to Officer Jane Doe. (Docket No. 12 at 6). Officer Doe apparently passed this grievance on to Superintendent Barnes, because plaintiff states that between July 11 and July 25, 2020, he spoke with Barnes through his cell door. Plaintiff allegedly "explained to [Superintendent Barnes] that [plaintiff] had a right to recreation, access to the Courts, telephone, Attorney visits, [and] a right to appear in Court and face [his] accusers." Under Barnes's "policy," plaintiff states that he has been denied those rights. Plaintiff also accused Superintendent Barnes of failing to provide N-95 masks. According to plaintiff, Superintendent Barnes told him that nothing could be done until plaintiff was released from isolation.

Plaintiff further states that he told Superintendent Barnes that he had mold in his cell "by the toilet," but that Barnes walked away. He also asserts that Superintendent Barnes "allowed detainees to freely pop out of their cells," and that Barnes knows this "because so many have [popped] out and jumped on people[,] including officers." Plaintiff states that this allows COVID-19 to spread "throughout the jail."

On August 25, 2020, plaintiff states that he became ill again. A nurse came to his cell and told him that he "could have lung cancer but they would not be able to test for it here at the jail." (Docket No. 12 at 7). He alleges that he is susceptible to contracting coronavirus, and that Superintendent Barnes "has not changed his policy." He also states that he has not seen a doctor, though elsewhere in the amended complaint he acknowledges seeing Dr. Fuentez.

With regard to Officer Wilkes, plaintiff notes that Officer Wilkes worked on the housing unit where he was celled. (Docket No. 12 at 8). He states that he observed Officer Wilkes "use the control board to let several detainees out of [their] cells and /or allow them to use their devices to pop out of their cells."  Plaintiff asserts that Officer Wilkes also allows these inmates to cook together and have extra recreation. He contends that this puts him at risk for contracting COVID-19.

As to Officer Riggins, plaintiff states that Riggins and Nurse Brown placed two detainees into his cell on July 8, 2020, when plaintiff was in the infirmary. (Docket No. 12 at 9). He states that both detainees were positive for COVID-19, though it appears this was not known at the time. After plaintiff tried to "physically stop them from allowing the two detainees from entering the cell," Officer Riggins threatened to deploy pepper spray, at which point plaintiff moved "out of the way." Officer Riggins advised plaintiff that the two detainees were being placed into his cell because they had "similar symptoms" as he did.

With regard to Corizon, plaintiff alleges that Corizon has "failed to properly train its medical staff" because the "medical staff allowed [him] to be placed in cells in deplorable conditions," including mold and standing water. (Docket No. 12 at 10). He further states that medical staff "failed to refer him to an outside hospital," and "[unintelligently] placed two detainees in the cell with [him] who later tested positive with [COVID-19] while [he] was waiting on [his] test to come back." Plaintiff believes that he should have been kept separate from the other detainees.

Finally, with regard to Dr. Fuentez, plaintiff states that Fuentez placed him under isolation because he was exhibiting symptoms that mirrored COVID-19. (Docket  No. 12 at 11). He also states that the cell he occupied was "deplorable," and had standing water and mold. Plaintiff further

6

suggests that two other detainees should not have been allowed into the cell with him, and that he advised Dr. Fuentez of this belief. He also claims that Dr. Fuentez has failed to follow up with him regarding his lung condition.

Plaintiff states that as a result of defendants' actions, he has suffered body aches, headaches, lung pain, leg aches, coughing, sneezing, wheezing, abdominal pain, and numbness in his extremities. (Docket No. 12 at 5). As a result, he is seeking immediate release from detention, as well as $100,000 in compensatory damages, and $25,000 in punitive damages. (Docket No. 12 at 12).

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, naming Nurse Brown, Superintendent Barnes, Officer Wilkes, Officer Riggins, Corizon, and Dr. Fuentez as defendants.[3] For the reasons discussed below, the Court will dismiss the claims against Andreal Brown, Adrian Barnes, Officer Wilkes, Officer Riggins, and Corizon. Additionally, the Court will direct the Clerk of Court to issue process on Dr. Fe Fuentez in her individual capacity as to plaintiff's claim of deliberate indifference to his medical needs.

### A. Nurse Brown

Plaintiff accuses Nurse Brown of being deliberately indifferent to his medical needs, and also subjecting him to unconstitutional conditions of confinement.

___

[3] The Court notes that plaintiff has not renewed his claims against the SLCJC in his amended complaint. Even if he had, a jail is not a suable entity. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (stating that "departments or subdivisions" of local government are not "juridical entities suable as such"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities). Moreover, even if the City of St. Louis was substituted as a proper party defendant, plaintiff makes no allegations in support of the contention that his constitutional rights were violated to an unconstitutional municipal policy, custom, or failure to train. *See Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (explaining that liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise").

### i.      Deliberate Indifference

At all relevant times, plaintiff was a pretrial detainee, so his constitutional claims arise pursuant to the Fourteenth Amendment. *See Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). However, the Fourteenth Amendment provides at least as much protection to pretrial detainees as the Eighth Amendment does to convicted prisoners. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Accordingly, a pretrial detainee's medical claims are analyzed under the Eighth Amendment's deliberate indifference standard. *See Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006). *See also Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020) (stating that a pretrial detainee has the same rights to medical care under the due process clause as an inmate has under the Eighth Amendment).

Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is incarcerating. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a government official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

In order to establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional

8

interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

To prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Thus, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

The Eighth Amendment forbids deliberate indifference to conditions posing "an unreasonable risk of serious damage…to future health." *See Helling v. McKinney*, 509 U.S. 25, 35 (1993). To that end, measures must be taken to contain the spread of infectious diseases. *See DeGidio v. Pung*, 920 F.2d 525, 533 (8th Cir. 1990) (determining that continuing failure of prison officials to institute a system to prevent the spread of tuberculosis violated the Eighth Amendment).

Here, plaintiff accuses Nurse Brown of placing detainees into a cell with him, potentially exposing him to COVID-19. This is insufficient to state a claim of deliberate indifference. That is, plaintiff's facts do not show that Nurse Brown's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." To the contrary, it is clear from the amended complaint that Nurse Brown was attempting to contain the spread of COVID-19 by keeping people who were exhibiting symptoms together, while also keeping them apart from people who did not have symptoms. Plaintiff acknowledges experiencing symptoms associated with COVID-19, and that he was placed into isolation in the infirmary for that reason. The

9

detainees placed in the cell with him were exhibiting similar symptoms. Plaintiff has not shown that this attempt to quarantine inmates during a pandemic is inappropriate or amounts to deliberate indifference. Indeed, at other places in his amended complaint, he criticizes the staff at the SLCJC for failing to do this very thing.

Clearly, there can be Eighth Amendment liability for failure to take actions to halt the spread of a disease. However, in this case, there is no indication that Nurse Brown failed to take precautions with regard to COVID-19. As plaintiff himself notes, when he showed COVID-19-like symptoms, he was placed into isolation in the infirmary. Plaintiff also notes that inmates were provided with masks and testing. When plaintiff tested negative for COVID-19, he was released from the isolation cell in the infirmary, but still kept in isolation in general population. These facts do not demonstrate deliberate indifference on the part of Nurse Brown or anyone else. For this reason, to the extent that plaintiff accuses Nurse Brown of deliberate indifference, the claim against her must be dismissed.

### ii.    Conditions of Confinement

The Supreme Court has determined that the government may detain defendants before trial and "subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979). To that end, there are two ways to determine whether conditions rise to the level of punishment. *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 907 (8th Cir. 2020). First, a plaintiff can show that his or her conditions of confinement were intentionally punitive. *Id*. Second, in lieu of an "expressly demonstrated intent to punish," a plaintiff can "also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id*. If conditions are arbitrary

or excessive, it can be inferred that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon pretrial detainees. *Id*. "However, not every disability imposed during pretrial detention amounts to punishment in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

To the extent that plaintiff is alleging that Nurse Brown's placement of other detainees into his isolation cell created an unconstitutional condition of confinement, he has failed to show that this action constituted punishment. That is, nothing in the amended complaint suggests that Nurse Brown intended to punish plaintiff by placing the detainees into his cell. Furthermore, plaintiff has not established that there was no legitimate purpose to Nurse Brown's actions. Rather, as previously noted, plaintiff was placed in an isolation cell in the infirmary because he had symptoms associated with COVID-19. The other detainees placed into the cell had the same symptoms. According to plaintiff, they were kept in this cell while awaiting testing. By his own facts, he has shown a legitimate, nonpunitive reason for Nurse Brown's behavior. *See May v. Higgins*, 2020 WL 4919562, at *2 (E.D. Ark. 2020) (noting that the world "is in the midst of a COVID-19 pandemic and that preventing the spread of that disease among…confined individuals and workers…is a legitimate governmental purpose").

Plaintiff also states that Nurse Brown had him placed in a cell that had "deplorable conditions" such as mold and standing water. However, plaintiff has not demonstrated Nurse Brown's personal responsibility for the maintenance of the cells, which is required to state a claim under 42 U.S.C. § 1983. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (explaining that § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"). More specifically, Nurse Brown is alleged to be a charge nurse employed by Corizon. There is no indication in the amended complaint that part of her responsibilities entails the

11

maintenance of the cells in the SLCJC. *See Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993)

(dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and

therefore, "there can be no causal connection between any action on the part of the defendants and

any alleged deprivation" of plaintiff's rights); and *Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir.

2019) (stating that a plaintiff must allege facts connecting the defendant to the challenged action).

For these reasons, to the extent that plaintiff accuses Nurse Brown of creating an

unconstitutional condition of confinement, the claim against her must be dismissed.

### B. Superintendent Barnes

Plaintiff accuses Superintendent Barnes of supervisory liability for various alleged

constitutional violations occurring at the SLCJC. Vicarious liability is inapplicable to § 1983 suits.

*Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018). As such, "[g]overnment officials are

personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir.

2015). Thus, "a supervising officer can be liable for an inferior officer's constitutional violation

only if he directly participated in the constitutional violation, or if his failure to train or supervise

the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010).

*See also Morris*, 954 F.3d at 1060 ("To state a claim against a supervisor, a plaintiff must show

that the supervising official, through his own individual actions, violated the Constitution"). In

order to maintain an action for training or supervisory liability, the plaintiff must show that the

failure to train or supervise caused the injury. *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849

(8th Cir. 2011).

### i.     Claims Relating to Plaintiff's Placement in Isolation

Plaintiff states that Superintendent Barnes's "policy" has violated his "right to recreation,

access to the Courts, telephone, Attorney visits, [and] right to appear in Court and face [his]

accusers." To begin, however, plaintiff has not made any effort to support his conclusion that those rights have been violated.

With regard to his right to recreation, plaintiff does not present facts showing that Superintendent Barnes has been deliberately indifferent to his exercise needs. *See Wishon v. Gammon*, 978 F.2d 446, 448-49 (8th Cir. 1992). That is, he has not established how long he has gone without recreation, the availability of recreation within the cell, the size of his cell, or that he has suffered any ill effects from a lack of recreation. Instead, he relies on an unsupported conclusion, which the Court is not required to accept as true. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level").

With regard to plaintiff's claimed right to use the telephone, such a right is not unlimited. *See Beaulieu v. Ludeman*, 690 F.3d 1017, 1039 (8th Cir. 2012). To that end, plaintiff has not provided any facts showing that his inability to access the telephone while in isolation in the infirmary is not a rational limitation. *See Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir. 1989). Instead, as above, he relies on an unsupported legal conclusion, stating that a right has been violated, without enhancing that conclusion with any facts.

With regard to plaintiff's assertion that he is being denied access to the courts, plaintiff provides no facts to show that he is being impeded in pursuing a nonfrivolous legal claim. *See White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007). As to his claims that he is being denied attorney visits, that he is being denied his right to appear in court, and that he is being denied his right to face his accusers, plaintiff again presents no facts to buttress his contentions. However, in reviewing plaintiff's pending state criminal case, the Court notes that plaintiff is represented by

counsel, and that the matter has not yet gone to trial, meaning plaintiff has not been denied the opportunity to confront his accusers.[4]

Furthermore, as plaintiff himself acknowledges, the alleged curtailing of these rights has come about because plaintiff was isolated in the infirmary with COVID-19-like symptoms. Nothing in the amended complaint suggests that there was anything inappropriate in restricting plaintiff's ability to do certain things while in quarantine. For instance, plaintiff has not established that a temporary restriction on him going to court in person, while awaiting the results of a COVID-19 test, was somehow inappropriate, given the potential for a carrier of the virus to spread it to others. In other words, to the extent that Superintendent Barnes had a "policy" of preventing inmates in quarantine from engaging in certain activities, plaintiff has not shown that such a policy is unconstitutional. Indeed, as noted above, the SLCJC is required to implement a system to stop the spread of COVID-19. *See DeGidio*, 920 F.2d at 533 (determining that continuing failure of prison officials to institute a system to prevent the spread of tuberculosis violated the Eighth Amendment).

### ii.     Claims Relating to Masks, Mold in Cells, and Detainees Popping Cells

Plaintiff has also alleged that Superintendent Barnes is responsible for unconstitutional conditions of confinement relating to Barnes's failure to provide plaintiff the N-95 mask, his failure to do anything about the mold in plaintiff's cell, and his failure to prevent inmates freely coming out of their cells.

---

[4] Plaintiff's criminal case is *State v. Ware*, No. 2022-CR01083 (22nd Jud. Cir., City of St. Louis). The Court reviewed the case on Case.net, Missouri's online case management system. The Court takes judicial notice of this public record. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (explaining that district court may take judicial notice of public state records); and *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records").

14

With regard to a pretrial detainee's conditions of confinement, the Supreme Court has determined that the government may detain defendants before trial and "subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell*, 441 U.S. at 536-37. To that end, there are two ways to determine whether conditions rise to the level of punishment. *Stearns*, 957 F.3d at 907. First, a plaintiff can show that his or her conditions of confinement were intentionally punitive. *Id*. Second, in lieu of an "expressly demonstrated intent to punish," a plaintiff can "also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id*. If conditions are arbitrary or excessive, it can be inferred that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon pretrial detainees. *Id*. "However, not every disability imposed during pretrial detention amounts to punishment in the constitutional sense." *Smith*, 87 F.3d at 268.

As to the allegation regarding the N-95 mask, plaintiff makes no effort to explain why Superintendent Barnes's purported failure to provide him with such a mask constitutes punishment. Plaintiff freely acknowledges in the amended complaint that inmates have received masks, and he presents no further factual enhancement to support his proposition that N-95 masks in particular are constitutionally mandated. Such conclusory pleading is insufficient to state a claim. *See Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (explaining that "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice").

Similarly, plaintiff has not shown that the mold in his cell constitutes punishment. That is, plaintiff makes no effort to provide facts demonstrating how long he was in the cell, how much mold was in the cell, or that exposure to the mold created any negative consequences. As noted

above, "not every disability imposed during pretrial detention amounts to punishment in the constitutional sense." *Smith*, 87 F.3d at 268 (determining that pretrial detainee's allegations regarding "raw sewage" did "not rise to a level of constitutional significance"). Plaintiff's bare allegation of mold being present in his cell, without more, does not establish an unconstitutional condition of confinement.

Likewise, plaintiff's allegations regarding detainees popping their cells fails to establish that his conditions of confinement amount to punishment. *See Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (explaining that a pretrial detainee's due process rights are violated if his "conditions of confinement constituted punishment"). That is, he has not established that Superintendent Barnes's purported knowledge that other detainees were leaving their cells amounts to a purposeful act, directed at plaintiff, that was punitive in nature. While he has potentially described a breach of the SLCJC's rules, his facts have not shown a constitutional violation.

The Court notes that plaintiff has not alleged that he has been placed at risk of an assault or that the jail is failing to protect him from other inmates. Instead, plaintiff is concerned about the potential spread of COVID-19 by detainees congregating with each other. However, plaintiff does not allege that he has contracted COVID-19, or that he has been exposed or even potentially exposed to COVID-19 in this manner. As such, plaintiff has not shown that Superintendent Barnes's "failure to fix the locks to prevent [other detainees] from coming out" has caused him an injury. *See Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008) ("Because a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some actual injury before he can receive compensation"); and *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (stating that in a § 1983 claim, a plaintiff "must allege a personal loss").

For these reasons, plaintiff's claim against Superintendent Barnes in his individual capacity must be dismissed.

### C. Officer Wilkes

Plaintiff has accused Officer Wilkes of subjecting him to unconstitutional conditions of confinement. As previously discussed, the Supreme Court has determined that the government may detain defendants before trial and "subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell*, 441 U.S. at 536-37. To that end, there are two ways to determine whether conditions rise to the level of punishment. *Stearns*, 957 F.3d at 907. First, a plaintiff can show that his or her conditions of confinement were intentionally punitive. *Id*. Second, in lieu of an "expressly demonstrated intent to punish," a plaintiff can "also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id*. If conditions are arbitrary or excessive, it can be inferred that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon pretrial detainees. *Id*. "However, not every disability imposed during pretrial detention amounts to punishment in the constitutional sense." *Smith*, 87 F.3d at 268.

Here, plaintiff's only allegations against Officer Wilkes are with regard to Wilkes apparently allowing other inmates to leave their cells and congregate in the jail. Plaintiff believes that this puts him at increased risk for contracting COVID-19. While plaintiff may have described a breach of the rules at the SLCJC, his facts, without more, do not establish that his constitutional rights have been violated. That is, plaintiff has not shown that Officer Wilkes has done anything to him that can be construed as punitive in nature. *See Owens*, 328 F.3d at 1027 (explaining that a

17

pretrial detainee's due process rights are violated if his "conditions of confinement constituted punishment"). Indeed, plaintiff does not allege that this action was directed at him whatsoever.

Furthermore, plaintiff has not demonstrated that Officer Wilkes's actions have caused him an injury or a personal loss. *See Irving*, 519 F.3d at 448 ("Because a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some actual injury before he can receive compensation"); and *Martin*, 780 F.2d at 1337 (stating that in a § 1983 claim, a plaintiff "must allege a personal loss"). In particular, plaintiff does not allege that he has been placed at risk of an assault or that Officer Wilkes has failed to protect him from other inmates. He also does not provide any facts demonstrating that detainees leaving their cells and congregating has actually or potentially exposed him to COVID-19.

For these reasons, plaintiff's individual capacity claim against Officer Wilkes must be dismissed.

### D. Officer Riggins

Plaintiff claims that Officer Riggins was deliberately indifferent to his medical needs, and also subjected him to unconstitutional conditions of confinement.

#### i. Deliberate Indifference

In order to establish deliberate indifference, plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *See Roberts*, 917 F.3d at 1042. With regard to Officer Riggins, plaintiff alleges only that Riggins, along with Nurse Brown, placed two detainees into his cell on July 8, 2020. Plaintiff states that he was suffering from pneumonia or a lung infection, and that because of the risk of COVID-19, the two detainees should not have been placed with him. However, as plaintiff himself explains, he was in the infirmary at the time because he was experiencing the symptoms of

COVID-19 himself, and was awaiting test results. He further acknowledges that the detainees placed in the cell with him were exhibiting similar symptoms.

These facts do not demonstrate that Officer Riggins was deliberately indifferent to plaintiff's serious medical needs. He does not allege that Officer Riggins delayed, denied, or interfered with any course of treatment. Instead, plaintiff shows only that Officer Riggins took part in isolating inmates exhibiting the symptoms of COVID-19 in order to keep them separate from other inmates. These actions, taken in the midst of a pandemic, fail to establish that Officer Riggins violated plaintiff's right to adequate medical care.

### ii.    Conditions of Confinement

As noted above, a person may be detained and subjected to certain restrictive conditions before trial as long as those conditions do not amount to punishment or violate the constitution. *See Bell*, 441 U.S. at 536-37. Here, plaintiff asserts that Officer Riggins, along with Nurse Brown, put two pretrial detainees into his cell who were positive for the coronavirus. When plaintiff tried to physically stop this from occurring, Officer Riggins threatened to deploy pepper spray, and plaintiff complied.

These facts do not establish that Officer Riggins's actions were punitive in nature or violated the constitution. As plaintiff himself explains, he was in an isolation cell in the infirmary because he exhibited symptoms similar to those caused by COVID-19. The two detainees who were placed into plaintiff's cell, and who later tested positive, were also exhibiting similar symptoms. It is thus clear that Officer Riggins was executing a quarantine plan in which people who were potentially sick were kept together, away from people who were not showing symptoms. Nothing in plaintiff's facts indicates that the detainees were placed into his cell for any but medical reasons, and certainly not for the purpose of punishing plaintiff. Furthermore, as noted above,

instituting a quarantine to stop the spread of COVID-19 is a legitimate governmental purpose. *See May*, 2020 WL 4919562, at *2 (noting that the world "is in the midst of a COVID-19 pandemic and that preventing the spread of that disease among…confined individuals and workers…is a legitimate governmental purpose"). As such, plaintiff's individual capacity claim against Officer Riggins must be dismissed.

### E.  Corizon

 "A corporation acting under color of state law cannot be liable on a respondeat superior theory." *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Rather, to support a claim against such a corporation, the plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). *See also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983"); and *Stearns*, 957 F.3d at 906 (explaining that the "proper test" for determining whether a corporation acting under color of state law is liable under 42 U.S.C. § 1983 "is whether there is a policy, custom, or action by those who represent…official policy that inflicts injury actionable under § 1983").

Here, as noted above, Corizon cannot be held liable simply because it employed a person who violated plaintiff's rights. Instead, plaintiff must show that Corizon itself is liable due to a policy, custom, or official action that caused him injury. He has not done this. Plaintiff's allegation regarding Corizon's purported failure to train its staff is conclusory and does not state a constitutional violation. *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do"). In particular, plaintiff's allegations focus on his own personal situation, and

20

do not establish a pattern of unconstitutional violations necessary to show a failure to train. *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017) (explaining that to establish a deliberately indifferent failure to train or supervise, a plaintiff must allege a "pattern of similar constitutional violations by untrained employees").

Similarly, his contention that "medical staff [unintelligently] placed two detainees in the cell with [him] who later tested positive" for COVID-19 does not demonstrate deliberate indifference. That is because plaintiff also exhibited symptoms of COVID-19, and it is apparent that medical staff was attempting quarantine measures. *See Cameron v. Bouchard*, 815 Fed. Appx. 978, 986 (6th Cir. 2020) (explaining that the quarantining of "any inmate exposed to COVID-19 is strong evidence that [defendants] are responding reasonably to the risk posed by the virus"). Plaintiff's assertion that the response by Corizon staff is "unintelligent" amounts to nothing more than a disagreement with medical decisions, and it not actionable. *See Cejvanovic v. Ludwick*, 923 F.3d 503, 507 (8th Cir. 2019) (stating that a "mere disagreement with treatment decisions…does not rise to the level of a constitutional violation").

Finally, plaintiff provides no facts to support the proposition that Corizon staff "failed to refer [him] to an outside hospital" due to a policy, custom, or official action. In other words, there are no allegations that Corizon had a policy or custom of refusing to refer inmates to an outside hospital, or any indication that any refusal to send plaintiff to an outside hospital was due to an official action on Corizon's part. For these reasons, plaintiff's claim against Corizon must be dismissed.

### F.  Dr. Fuentez

Plaintiff claims that Dr. Fuentez was deliberately indifferent to his medical needs, and also subjected him to unconstitutional conditions of confinement.

i.       **Deliberate Indifference**

As explained above, a pretrial detainee's medical claims are analyzed under the Eighth Amendment's deliberate indifference standard. *See Grayson*, 454 F.3d at 808. In order to establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts*, 917 F.3d at 1042. "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman*, 114 F.3d at 784. Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn*, 49 F.3d at 1346.

To prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson*, 756 F.3d at 1066. As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay*, 847 F.3d at 643. Thus, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson*, 433 F.3d at 646.

Here, plaintiff's allegation that Dr. Fuentez placed him under isolation with two other detainees who were exhibiting similar symptoms does not state a deliberate indifference claim. That is, plaintiff has not shown that Dr. Fuentez's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." Rather, as plaintiff himself acknowledges at several points, he was exhibiting symptoms that "mirrored" COVID-19, and was

22

being kept in isolation in the infirmary. The inmates placed in his cell were experiencing the same symptoms. In other words, plaintiff was being subjected to quarantine measures. Nothing in the amended complaint suggests that such measures amount to deliberate indifference, especially in light of the context that plaintiff describes.

However, plaintiff's allegation that Dr. Fuentez failed to follow up with his lung condition is sufficient to pass initial review. At various points, plaintiff states that the lung condition is pneumonia or possibly cancer. Plaintiff states that he is suffering symptoms from this condition on an ongoing basis, and that he is not being treated for that need by Dr. Fuentez. Accepting this allegation as true, the Court will direct the Clerk of Court to issue process on Dr. Fuentez in her individual capacity as to plaintiff's claim of deliberate indifference to his medical needs.

ii.     **Conditions of Confinement**

Plaintiff also contends that Dr. Fuentez placed him in a cell that had "deplorable conditions, such as standing water on the floors, mold on the walls, and allowing two other detainees to be placed in the cell with [him] that may have had the coronavirus."

As previously noted, a pretrial detainee's conditions of confinement violate the constitution if they amount to punishment. *Bell*, 441 U.S. at 536-37. With regard to being housed with two other detainees who "may have had the coronavirus," plaintiff provides no facts to show that Dr. Fuentez acted punitively. Moreover, plaintiff has not shown that this action was unrelated to a legitimate interest, as plaintiff himself acknowledges that he was being held in isolation in the infirmary in response to the COVID-19 pandemic. *See May*, 2020 WL 4919562, at *2 (noting that the world "is in the midst of a COVID-19 pandemic and that preventing the spread of that disease among…confined individuals and workers…is a legitimate governmental purpose").

With regard to the claim about standing water and mold, plaintiff has again failed to show that these conditions amounted to punishment. *Smith*, 87 F.3d at 268 (determining that pretrial detainee's allegations regarding "raw sewage" did "not rise to a level of constitutional significance"). Furthermore, plaintiff has not established Dr. Fuentez's personal responsibility for maintaining the cell. *See Madewell*, 909 F.2d at 1208 (stating that 42 U.S.C. § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"). For these reasons plaintiff has not stated a conditions of confinement claim against Dr. Fuentez.

### G.  Motion to Seal Claim

Plaintiff has filed a motion to seal his claim against one of the defendants due to his fear of retaliation. (Docket No. 13). Pursuant to E.D. Mo. L.R. 13.05, the Court may order that "documents filed in a civil case be received and maintained by the Clerk under seal," upon the showing of good cause. Good cause being shown, the Court will direct the Clerk of Court to place plaintiff's amended complaint (Docket No. 12) under seal.

### H.  Motion for Preliminary Injunction

Plaintiff has filed a motion for preliminary injunction. (Docket No. 15). Many of the allegations in the motion are similar to those contained in the amended complaint. However, plaintiff adds additional facts regarding the alleged nontreatment of his lung condition. He further states he was "assaulted by an officer who slammed his foot between his cell door," though he does not name the officer or provide any factual amplification. Plaintiff feels that his medical condition is worsening, and requests immediate release from custody; an order to be placed in a single-man cell; an immediate telephone or video conference; and to be seen by an outside hospital.

Since filing the motion for preliminary injunction, plaintiff has advised the Court that he is no longer incarcerated at the SLCJC. (Docket No. 17). Because he is no longer subject to the

conditions for which he is seeking injunctive relief, the motion for preliminary injunction must be denied as moot. *See Gladson v. Iowa Dept. of Corrections*, 551 F.3d 825, 835 (8th Cir. 2009) (determining that since former Iowa State Penitentiary inmate was "no longer incarcerated at the ISP and subject to the allegedly offending policy, his claims [for injunctive relief] are moot"); *Walker v. Bowersox*, 526 F.3d 1186, 1189 (8th Cir. 2008) (stating that inmate's requests for injunctive relief were moot because he was no longer incarcerated at the South Central Correctional Center, but was in another prison); *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (explaining that "an inmate's claims for declaratory and injunctive relief to improve prison conditions were moot when he was transferred to another facility and was no longer subject to those conditions); and *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (stating that "a prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions").

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to seal claim (Docket No. 13) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall place plaintiff's amended complaint (Docket No. 12) under seal.

**IT IS FURTHER ORDERED** that  plaintiff's motion for preliminary injunction (Docket No. 15) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's claims against Andreal Brown, Adrian Barnes, Officer Wilkes, Officer Riggins, and Corizon are **DISMISSED** without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

25

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on defendant Fe Fuentez in her individual capacity as to plaintiff's claims of deliberate indifference to his medical needs. Defendant Fuentez shall be served in accordance with the waiver agreement this Court maintains with Corizon.

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal would not be taken in good faith.

Dated this 9th day of December, 2020.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE